STATE, AMOS CLARK, JR., PROSECUTOR, v. ISAAC H. PIERSON ET AL.

1. In proceedings under § 32 of the road act to remove encroachments, each land owner affected, is entitled to a reasonable notice of the time and place of meeting of the justices and surveyors.
2. Where the determination states that such notice was given, the burden of proof is on the land owner to show that it was not served.
3. If a prior owner has encroached, the continuance by the present owner is his encroachment.
4. No number of years will legalize encroachments upon a public highway regularly laid out.
5. Where the justices and surveyors certify that they have determined that the land owner has encroached, and define the centre line of the road, as originally laid out, by fixed monuments, courses and distances, give the width and place stakes along the centre and outside lines, such determination sufficiently describes the encroachment.

State, Clark, pros., v. Pierson.

On *certiorari* to Isaac H. Pierson and George Godfrey, two justices of the peace, of the county of Union, and John J. Marsh and Anson F. Grant, two surveyors of the highways of the township of Westfield, in said county, and Clark Scudder, an overseer of the highways of said township, to review certain proceedings for the removal of encroachments on a highway in said township, commencing in front of Samuel E. Young's blacksmith shop, passing Aaron Clark's lands, and others, to the Presbyterian church in Westfield.

Argued at February Term, 1874, before Justices BEDLE and SCUDDER.

For the prosecutor, *J. R.* and *N. English.*

For the defendants, *J. C. Bolton* and *B. Williamson.*

The opinion of the court was delivered by

SCUDDER, J.   The first reason assigned by the prosecutor why the proceedings should be set aside is, that no notice was given to him of the meeting of the justices and surveyors for the purpose of determining the encroachments on the highway.   The prosecutor was a land owner upon said highway, and was affected by the determination of the justices and surveyors of the highways.   He was, therefore, entitled to notice of their meeting.   Such notice is not required by section 32 of the road act, under which these proceedings were had, but each land owner affected is entitled to a reasonable notice of the time and place of such meeting.   It is not necessary that the statute should so direct, for *ex debito justiciæ,* no man's rights shall be adjudged unless he have the opportunity of being heard.   *Vantilburgh* v. *Shann,* 4 *Zab.* 740 ; *Lindsley* v. *Freeman,* 3 *Dutcher* 250.

The certificate signed by the above named officers, states that notice in writing was given to the prosecutor, at least five days before the time to appear before them at the house of Clark Scudder, in said township, on the 20th day of July, at

the hour of ten in the forenoon. This notice, if given, was reasonable in length, specific and sufficient, both as to time and place. The prosecutor was examined as a witness on this motion, and says he has no recollection of such notice; that James E. Roberts, his agent, who looks after his property at Westfield, told him that he (Roberts) had showed him (Clark) such notice, and he recollects that he gave Roberts some notice. He will not swear positively that he did not receive such notice. He says he thinks he had a conversation with Roberts, in which he was informed that the surveyors and justices had adjourned, to enable him to be present in person. This testimony supports and does not contradict the certificate of these officers, and shows that he had a proper notice of the meeting, which he forgot or neglected.

2. The second reason is, that the road was not encroached upon by the prosecutor.

Whether this means that he has not done so personally, and that if so, it was before his title; or whether he intends it as a denial of any encroachment opposite his lands, is not certain. If the first is his meaning, then the answer is, that it is not necessary. If the former owner has encroached, and he continues and maintains it, then it is his encroachment. The continuance of a trespass is a trespass, after notice. If he intends the latter, that there is no encroachment opposite his lands, then he is contradicted by the certificate of the justices and surveyors, who adjudge, upon their examination, that he does encroach on the highways; and by the testimony of William Clark, Clark Scudder and Levi Cory, three witnesses, who say that Jonathan Woodruff, a former owner of these lands, moved the fence out in the road from six to ten feet, though some of them say that they think the fences were afterwards moved back. This removal was done many years ago, but this is immaterial, for no number of years will legalize encroachments upon a public highway regularly laid out. *Mayor of Jersey City* v. *Morris Canal and Banking Company*, 1 *Beas.* 547.

3. The next reason assigned is, that the determination of

the justices and surveyors, does not set out the precise encroachment of the prosecutor, or of any other person, nor state that it is doubtful who encroached upon the road.

The true question is, not what these officers have done as to other's lands, but what they have done as to the prosecutor's. His point must be that they have not definitely described his encroachment. Neither is it required that they shall state it is doubtful who encroached upon the road, unless they have such doubt, and under the last clause of section 32 of the act, direct the overseer to open the highway equally on each of the opposite land owners. But in this case, the justices and surveyors have defined the encroachments made or maintained by the prosecutor and others.

They certify that the overseer of that division of the highways of that township, being doubtful who had narrowed and encroached upon said highway, applied to them to determine; and they did determine that the prosecutor and others encroached. They first examined the highway, and employed two practical surveyors to make surveys and maps of the road, according to the original return. They thus determined that the road was sixty-six feet in width, and that the highway should be opened thirty-three feet on each side of a centre line, marked by beginning and ending points, particularly described, with reference to fixed monuments; and between these points gave the courses and distances, with stakes set at the angles of the road. It appears by the evidence that they also marked the outside lines with stakes. They also made a survey and map, which were annexed to their certificate; and conclude thus: " Which said line we do determine to be the true centre line of said highway, and we do order the said overseer to open the same according to this our determination, so that the said line, as above designated, shall be the centre line thereof."

They thus determine that the prosecutor has encroached upon and narrowed said highway; and by a well defined centre line and outside lines staked, show the extent and measure of the encroachment. The map also shows the out-

side lines by closed black lines, and the encroachments by dotted lines. No form is given in the statute. It says that if it be doubtful to the overseer what person hath so narrowed or encroached upon the said highway, then the two justices and the surveyors shall determine the same, in writing, under their hands. They do determine that the prosecutor has encroached, and define the line of encroachment. This is all the statute requires. The same particularity is not required as in the original laying out of the road. Assuming that the true boundaries of the road are known, or can be ascertained, the statute directs the justices and surveyors to determine, in a summary manner, for the information of the overseer of the highways, who has made the encroachments. Whether they be recent or ancient, there is no difference. It sometimes happens that for years, upon each new setting of the road side fences, the land owners narrow the lines of the road until the encroachment becomes manifest, and the overseer is called upon to act on behalf of the public. The law says that "it shall be the duty of the overseer, in and through whose limits and division any highways are or shall be laid out, to cause the same to be opened to their full width, and all encroachments to be removed." When he is in doubt who has encroached, he calls to his aid the other officers named in the act in the performance of this duty. This prevents hasty and inconsiderate action on the part of the overseer, and provides for a deliberate judgment of officers having higher duties and responsibilities. It assumes that whoever encroaches on a public highway is a trespasser, and the right of the public must be promptly enforced against him.

The cases above cited—Vantilburgh v. Shaw and Lindsley v. Freeman—have been considered in their bearings upon this case.

In the former case the justices and surveyors, after determining the persons who had narrowed and encroached on the road, say that they have staked and marked the part so narrowed and encroached upon. They gave no fixed monuments and no courses and distances by which the extent of the

encroachments could certainly be known. The objection which the court made to this was, that the paper which was given to the overseer as his guide for removing fences and perhaps out-buildings, contained nothing which was definite or certain. It simply referred to stakes and marks placed by them in and upon the land, and which might be removed and effaced by his act of opening the highway, under their determination. It was held that this was too vague and was defective. In Lindsley v. Freeman, the order of the justices and surveyors was quashed, because it did not appear that they directly decided who had encroached on the highway, but only where the road ought to run.

This case is free from the errors which were held to be fatal in both of these cases.

It would hardly be practicable to measure and describe by metes, bounds and fixed monuments, each small piece of land included in the encroachment of every land owner on a public road that had been gradually narrowed for years, along an extended line, as appears to have been the case here; or where the road may never have been opened to its full width; and I cannot think of any better plan to determine a case where there are many encroachments, that to fix the true centre line of the road, as it was originally laid out, by certain monuments, and then require the overseer to open it upon each man's land who has encroached, to the width of the road as thus defined.

This is said in the last cause assigned for quashing this certificate, to be in effect, assuming the power of surveyors of the highways in altering and widening roads. But the difference is obvious. The justices and surveyors do not alter or widen a road, but determine the boundaries of an existing road which has been wrongfully narrowed. They alter and widen only by removing unlawful encroachments.

The recollections of witnesses which were offered to show where the fences had stood for many years, and whether the present opening agrees with those fences, is not very material in the case, for the true issue is not where the fences have

stood, but where they ought now to stand. The determination of this depends upon the original location of the road. If the justices and surveyors have departed from this location, and by mistake or caprice, have altered and widened the road different from the original laying, then the objection is a good one, but the evidence does not establish such departure. Other points argued in the brief are not assigned as causes for setting aside the reasons filed, and are not decided.

The motion to quash is refused, with costs.

Justice BEDLE concurred.